IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01153-MSK-KLM

WILDEARTH GUARDIANS,

     Plaintiff,

v.

IRG BAYAUD, LLC, a Colorado limited liability company,
BRENT ANDERSON, an individual, and
CITY AND COUNTY OF DENVER, a home rule municipality,

     Defendants.

_____

# ORDER
_____

## ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX

This matter is before the Court on **Defendants' Motion to Stay** [#29][1] (the "Motion")

and **Plaintiff's Opposed Motion to File a Surreply in Opposition to Defendants'**

**Motion to Stay** [#44] (the "Surreply Motion").  Plaintiff filed a Response [#34] to the Motion

and Defendants IRG Bayaud, LLC ("IRG") and Brent Anderson ("Anderson" and collectively

with IRG, the "Moving Defendants") filed a Reply [#43] in further support of the Motion.[2]

Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c), the Motion and the

Surreply Motion have been referred to the undersigned for disposition [##30, 49].  The

Court has reviewed the Motion, the Response, the Reply, the entire case file, and the

---

[1]  "[#44]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this Minute Order.

[2]  The Court discusses the Surreply Motion below.

applicable law, and is sufficiently advised in the premises.  For the reasons set forth below,

the Surreply Motion [#44] is **DENIED** and the Motion [#29] is **DENIED**.

## I.  Background

**A.     Procedural Background**

Plaintiff initiated this lawsuit against the Moving Defendants on April 23, 2014.  *See*

*generally Complaint* [#1].  In sum, Plaintiff alleges that Defendant IRG owns and operates

a former mining site located on the western bank of the South Platte River.  *Compl.* [#1] ¶¶

2-4.  Plaintiff further alleges that the former mining site discharges various pollutants into

the South Platte River in violation of the Federal Water Pollution Control Act, 33 U.S.C. §

1251, *et seq.* (the "Clean Water Act").  *Id.* ¶¶ 6-10.  In support of this contention, Plaintiff

alleges that "[d]ischarges of pollutants are only authorized under the [Clean Water Act] if

they meet the specific effluent limitations contained in" the National Pollutant Discharge

Elimination System permit (the "Permit") issued to Defendant IRG.  *Id.* ¶ 7.  The Permit was

issued by the Water Control Quality Division of the Colorado Department of Public Health

and the Environment (the "Division").  *Id.*  Plaintiff alleges that the Moving Defendants

violated the Clean Water Act (1) because the site has discharged pollutants in amounts that

exceed those allowed by the Permit, *id.* ¶ 9 ("Defendants' acidic discharges have occurred

virtually every month since IRG received their Permit in March 2008 and have significantly

exceeded the authorized effluent limitations in the [P]ermit."), and (2) because Defendant

IRG informed the Division on January 31, 2014 that it would no longer perform any of the

obligations required by the Permit and has not performed those obligations since January

2014.  *Id.* ¶¶ 11, 89-101.  As a result, in the initial Complaint Plaintiff brought two claims

2

against the Moving Defendants for violations of the Clean Water Act. *Id.* ¶¶ 104-115. The first claim is premised on the Moving Defendants' alleged discharge of pollution into the South Platte River in violation of the Permit. *Id.* ¶¶ 104-109. The second claim is premised on the Moving Defendants' alleged failure to perform monthly monitoring obligations as required by the Permit. *Id.* ¶¶ 110-115. The second claim is based, among other things, on allegations regarding the Moving Defendants' failure to "perform any monitoring obligations" as of January 2014, as well as its failure to ever "report instances of its pH effluent limitations non-compliance . . . ." *Id.* ¶¶ 89-93.

On June 6, 2014, the Moving Defendants filed two motions: (1) Defendants' Motion for Dismissal Without Prejudice or for Stay [#17], in which they argued that the Court should stay or dismiss this action pursuant to the doctrine of primary jurisdiction, and (2) Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) [#18].

On June 26, 2014, Plaintiffs filed their First Amended Complaint for Declaratory and Injunctive Relief and Civil Penalties [#20] (the "First Amended Complaint") that eliminated a previously named defendant and continued to assert the two claims discussed above against the Moving Defendants. *See generally Plaintiff's Notice of Filing First Amended Complaint as a Matter of Course, Ex. 1* [#21-1] (redline). As a result of the filing of the First Amended Complaint, the Court denied as moot Defendants' Motion for Dismissal Without Prejudice or for Stay [#17] and Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) [#18] without addressing the merits of either motion.

On July 21, 2014, Defendants filed the instant Motion [#29] requesting a stay.

On August 19, 2014, while briefing of the instant Motion was ongoing, Plaintiff filed its Second Amended Complaint for Declaratory and Injunctive Relief and Civil Penalties

3

[#39] (the "Second Amended Complaint").  In the Second Amended Complaint, Plaintiff added Defendant City and County of Denver ("Denver"), added factual allegations, added one claim, and clarified against whom the claims are brought.  *See generally Plaintiff's Notice of Filing Second Amended Complaint with Written Consent of Defendants, Ex. 1* [#40-1] (redline).   In the Second Amended Complaint, Plaintiff continues to assert a claim against the Moving Defendants under the Clean Water Act for alleged violations of the conditions imposed by the Permit.  Plaintiff brings its second Clean Water Act claim against all Defendants for the alleged discharge of pollutants after the termination of the Permit, if the Court determines that the Permit was terminated.  Finally, Plaintiffs add a claim against all Defendants under the Resource Conservation and Recovery Act (the "RCRA"), 42 U.S.C. § 6972(a)(1)(B).     In support of its claims against Defendant Denver, Plaintiff avers that Defendant Denver "took ownership of the property from IRG in 2009."  *Second Am. Compl.* [#39] ¶ 3.  Plaintiff further alleges that Defendant IRG installed "a concrete cap to prevent oxygenated rain and surface water from contacting the underground mining waste," but that "by depleting the oxygen in the [property's] groundwater," the cap has "adversely altered the groundwater chemistry beneath the" property.  *Id.* ¶ 106.  Plaintiff maintains that "[t]his has resulted in previously bound arsenic becoming mobile and being released in increasingly higher concentrations into the environment" since 2009 when the cap was installed.  *Id.* ¶¶ 106-07.  Plaintiff further alleges that the "groundwater beneath the [property] is hydrologically connected to the South Platte River . . . [which] serves as the drinking water for significant populations . . . ."  *Id.* ¶¶ 123-24.

B.    **The State Court Action**

In support of their arguments, the parties provided certain documents and

information about the status of the Permit and related state court action.  The documents

and briefing establish the following sequence of events:

- The Permit was issued to Defendant IRG on March 7, 2008.  *Motion, Ex. 2* [#29-2] at 1.

- On October 25, 2011, the Division sent a letter to Defendant IRG notifying it that pursuant to § 104(7) of the Administrative Procedures Act, Colo. Rev. Stat. § 24-4-101, *et seq.*, the Permit remained in effect until a new permit was issued.  *Motion, Ex. 3* [#29-3] at 1.

- The Permit states that it expired at midnight on October 31, 2011.  *Motion, Ex. 2* [#29-2] at 1.

- On January 27, 2014, Defendant IRG submitted a withdrawal of its application for renewal of the Permit, signed by Defendant Anderson, stating that "there is no point source discharge from the facility."  *Motion, Ex. 4* [#29-4] at 2.

- On April 11, 2014, the State of Colorado Department of Law sent the Moving Defendants a letter explaining that it "disagree[d] with your conclusion that IRG's withdrawal of the permit application terminated the Division's authority to act on the pending permit application and caused immediate expiration of the [ ] Permit . . . ." *Response, Ex. B* [#34-2] at 1.  The letter concluded by reminding the Moving Defendants that "IRG is legally required to comply with all CDPS sampling and monitoring requirements until the [P]ermit is modified or reissued by the Division, or IRG successfully goes through the permit termination process."  *Id.* at 3.

- On April 14, 2014, the Division sent a letter to the Moving Defendants informing them that it was "treating the [Permit] as an active, administratively-extended permit."  *Response, Ex. C* [#34-3] at 1.  In that letter, the Division outlined the standard it applies when determining if a permit may be terminated and further outlined the reasons why Defendant IRG had not met this standard.  *Id.* at 1-4.

- On May 8, 2014, Defendant IRG initiated a case with the Division regarding its request to withdraw its application for renewal of the Permit.  *See generally Motion, Ex. 5* [#29-5].  Defendant IRG requested that the Division hold a hearing regarding its determination that the Permit remained in effect.  *Id.* at 4.

- On June 6, 2014, the Division sent a letter to the Moving Defendants denying their request for a hearing.  *See generally Response, Ex. D* [#34-4].

- On July 3, 2014, Defendant IRG initiated a lawsuit against the Division in the district court for the City and County of Denver (the "State Court Action").  In the State Court Action, among other things, Defendant IRG seeks a declaratory judgment that

the Permit has expired or has been revoked. *Motion, Ex. 1* [#29-1] ¶¶ 40-47. Defendant IRG also asks the state court to compel the Division to hold a hearing regarding the status of the Permit. *Id.* ¶¶ 48-50. The parties to the State Court Action are Defendant IRG and the Division. *See generally id.*

## C.   The Motion

As noted above, the Motion was filed before the Second Amended Complaint, therefore, Defendants' arguments in the Motion are based on the two claims that were asserted in the First Amended Complaint. However, Plaintiff's Response and Defendants' Reply both discuss the filing of the Second Amended Complaint and the addition of Defendant Denver and the RCRA claim to this lawsuit.

In the Motion, the Moving Defendants argue that the Court should stay this litigation because "[a] determination as to whether the Permit is valid is necessary to resolve" Plaintiff's claims. *Motion* [#29] at 1. Specifically, according to the Moving Defendants: "If the Permit is valid, the second claim for relief fails; if the Permit is not valid, the first claim for relief fails." *Id.* at 2. The Moving Defendants argue that the Court should exercise its discretionary powers to stay proceedings and suggests that the Court apply the six factors discussed in *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Kozeny*, 115 F.Supp.2d 1243 (D. Colo. 2000). *Id.* at 4-8. They further argue that the Court should either stay the case or dismiss it without prejudice pursuant to the doctrine of primary jurisdiction because the Division should make a determination about the status of the Permit. *Id.* at 8-10.

In its Response, Plaintiff argues that *National Union* is inapplicable and that the Court should apply the standard discussed in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). *Response* [#34] 1-4. Plaintiff further argues that the *Colorado River* factors weigh against a stay. *Id.* at 8-13. Plaintiff avers that the primary

6

jurisdiction doctrine is not applicable to this case. *Id.* at 14-15.

In their Reply, the Moving Defendants argue that "Plaintiff's claims against Defendants depend upon answers to the very questions at issue in the state court: whether there is a discharge permit and whether there is a point source discharge of pollutants to a water of the United States." *Reply* [#43] at 1. The Moving Defendants maintain that the state court should rule on those questions before this Court moves forward with regard to Plaintiff's claims. *Id.* The Moving Defendants further argue that this Court cannot decide the issues asserted in the State Court Action because only a state court can consider an appeal of a determination made by the Division. *Id.* at 3 (citing Colo. Rev. Stat. § 25-8-404(2)). The Moving Defendants maintain that the standard discussed in *National Union* is applicable in this case, not the *Colorado River* doctrine, but that the factors in the two cases "are largely the same," *id.* at 4, and that the Court should stay this case while the State Court Action proceeds. *Id.* at 4-7.

## II. Analysis

### A.   The Surreply Motion

In the Surreply Motion, Plaintiff seeks permission to file a surreply [#44-1] in further opposition to Defendants' Motion for Stay [#29]. The Moving Defendants filed a Response [#47]. Plaintiff has not filed a reply and its time to do so has elapsed.

"Generally, the nonmoving party should be given an opportunity to respond to new material raised for the first time in the movant's reply." *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005). "Materials, for purposes of this framework, includes both new evidence and new legal arguments." *Id.* (internal quotation marks and citation omitted). "[However, i]f the [Court] does not rely on the new material in reaching its decision, [ ] it

does not abuse its discretion by precluding a surreply." *Id.* (internal quotation marks and citation omitted).

Plaintiff argues that the Moving Defendants offer two new legal arguments in their Reply [#43].  First, "Defendants' Reply for the first time presents legal argument based on Defendants' characterization of the Second Amended Complaint . . . ." *Motion* [#44] at 2. Second, "Defendants argue for the first time in their Reply that the state court judge (and not the Division) should determine the factual issue of whether a discharge of pollutants into the South Platte River exists . . . ." *Id.*

As explained in more detail below, the Court does not rely any either of these arguments in reaching its decision regarding the Motion.  Accordingly, the Surreply Motion [#44] is **DENIED**.

**B.    The Motion**

**1.    Applicable Standard**

As noted above, the parties disagree about what standard the Court should apply to the Moving Defendants' request for a stay to allow the State Court Action to proceed before the Court addresses Plaintiff's claims.  The Moving Defendants rely on *National Union* and Plaintiff relies on *Colorado River*.  The Court discusses each case below.

In *National Union* the Court addressed the Court's "inherent power to stay an action based on the pendency of a related proceeding in a foreign jurisdiction."  115 F.Supp.2d 1243, 1246 (D. Colo. 2000).  In that case, litigation was first brought in the United Kingdom and that court granted a worldwide injunction relating to a party's assets.  Because of an issue regarding the recognition of that injunction in countries over which the foreign court

did not have jurisdiction, a case was brought in Colorado "to freeze [the d]efendants' assets" located in the state. *Id.* at 1245. *National Union* is distinguishable from the instant case. Here, the Court is faced with the question of whether it should move forward when an action allegedly related to the instant action is pending in state court, not a foreign jurisdiction.

Plaintiff argues that *Colorado River* applies here. *Response* [#34] at 3. Specifically, Plaintiff maintains that "[u]nder the *Colorado River* doctrine, district courts only postpone the exercise of jurisdiction where a state court with concurrent jurisdiction is holding a parallel proceeding that will resolve all of the issues in the case." *Id. Colorado River* focuses not on entry of a stay, but on abstention from the exercise of jurisdiction to allow a state court to determine an issue. 424 U.S. 800, 813-21 (1976). In that case, the Supreme Court

> identified several nonexclusive factors, including 1) whether the state or federal court has assumed jurisdiction over property in dispute, 2) the inconvenience to the parties of the federal forum, 3) avoiding piecemeal litigation, and 4) the order in which the courts obtained jurisdiction. *Colorado River*, 424 U.S. at 818. The Supreme Court in *Moses H. Cone Hospital v. Mercury Construction,* 460 U.S. 1 (1983) added additional factors, including the vexatious nature of the litigation, *id.* at 18 n. 20, whether federal law provides the rule of decision, *id.* at 23, and the adequacy of the state court proceeding to protect the federal plaintiff's rights. *[I]d.* at 28.

> This list should not be applied as "a mechanical checklist." *Id.* at 16. Determining abstention requires "a careful balancing of the important factors as they apply in a given case, with balance heavily weighted in favor of jurisdiction." *Id.* "No one factor is necessarily [ ] determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River,* 424 U.S. at 818-19. *"Only the clearest of justifications will warrant dismissal."* *Moses H. Cone,* 460 U.S. at 16 (emphasis in original.)

*QFA Royalties LLC v. Bogdanova*, No. 06-cv-01776-LTB, 2006 WL 3371641, at *5-6 (D.

Colo. Nov. 21, 2006) (retaining jurisdiction and declining to abstain).  However, the Moving

Defendants do not ask the Court to abstain from this case.  Instead, they ask the Court to

stay this action while the State Court Action proceeds.

Even if the Moving Defendants were seeking abstention, the Court would first have

to determine whether the federal court case and the state court case are parallel.  *Id.* at *5;

*United States v. City of Las Cruces*, 289 F.3d 1170, 1182 (10th Cir. 2002) ("[A] finding of

parallel proceedings is a threshold condition for engaging in the *Colorado River* analysis.").

"Suits are parallel if substantially the same parties litigate substantially the same issue in

different forums." *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994).  In conducting this

analysis, the Court must "examine the state proceedings *as they actually exist* to determine

whether they are parallel to the federal proceedings."  *Id.* (emphasis in original).  The

Supreme Court has made clear that staying or dismissing a case under the *Colorado River*

doctrine would be "a serious abuse of discretion" unless "the parallel state-court litigation

will be an adequate vehicle for the complete and prompt resolution of the issue between

the parties . . . . [T]he decision to invoke *Colorado River* necessarily contemplates that the

federal court will have nothing further to do in resolving any substantive part of the case,

whether it stays or dismisses." *Moses H. Cone*, 460 U.S. at 28.

In the instant litigation, Plaintiff brings claims against Defendants for alleged

violations of the Clean Water Act and the RCRA.  *Second Am. Compl.* [#39] ¶¶ 160-94.

In the State Court Action, Defendant IRG seeks judicial intervention regarding the Division's

denial of Defendant IRG's request for a hearing and asks the state court for declaratory

relief. *Motion, Ex. 1* [#29-1]  ¶¶ 40-47, 48-50.  While there are questions presented in the

instant litigation regarding whether the Permit expired in January 2014, the proceedings are

not parallel. *See, e.g., Curren v. Experian Info. Solutions, Inc.*, No. 12-cv-02425-CMA-KLM, 2013 WL 61691, at *2 (D. Colo. Jan. 4, 2013) (finding that state and federal cases were not parallel even if there was some overlap between the cases); *DataLever Corp. v. Sugg*, No. 11-cv-02897-CMA-CBS, 2012 WL 1060017, at *3 (D. Colo. May 29, 2012) (finding that the state and federal lawsuits were not parallel because "the issues are not substantially the same"). Accordingly, the *Colorado River* doctrine is not applicable. The Court next turns to the standard for determining whether a stay should enter.

> In this Court,
>
> in considering the propriety of a stay under any circumstances, the court will consider "(1) plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *See String Cheese Incident, LLC v. Stylus Shows, Inc.,* 2006 WL 894955, 2 (D. Colo. 2006).

*Newark Revolving Holding Co. v. Bear Paw Joint Venture*, No. 11-cv-00959-WYD-KMT, 2011 WL 5439438, at *2 (D. Colo. 2011) (staying the case pending resolution of bankruptcy issues raised in a related state court action).

## 2.    Application of Applicable Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.,* 299 U.S. 248, 254 (1936); *see also Clinton v. Jones*, 520 U.S. 681, 706-07 (1997). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55. The underlying principle in determining whether to grant or deny a stay is that "[t]he right to proceed in court should not be denied except under the most

extreme circumstances." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Management, Inc.,* 713 F.2d 1477, 1484 (10th Cir. 1983) (quoting *Klein v. Adams & Peck,* 436 F.2d 337, 339 (2d Cir. 1971)).  In other words, stays should be the exception rather than the rule.

"Considerations of '(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." *Colorado River,* 424 U.S. 800, 817 (1976) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,* 342 U.S. 180, 183 (1952)).  "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction....' " *Id.* (quoting *McClellan v. Carland,* 217 U.S. 268, 282 (1910)).  Furthermore, "the mere potential for conflict of the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." *Id.* at 816.  However, the Supreme Court noted, "the general principle is to avoid duplicative litigation." *Id.*  Here, the Court notes that, while the State Court Action involves some of the same issues as those addressed in the instant litigation, the parties to the State Court Action are not the same as those appearing before this Court and the claims asserted here are not duplicative of those asserted in the State Court Action.  Further, while the State Court Action asks the state court to determine whether the "Permit expired by operation of [Colo. Rev. Stat.] § 24-4-104(7) on January 27, 2014," *Motion, Ex. 1* [#29-1] at 13, and a portion of the relief sought in the Second Amended Complaint is premised on the idea that the Permit did not expire in January 2014, this overlap does not require the Court to stay this action while the State Court Action

12

proceeds.  *See Fox v. Maulding,* 16 F.3d 1079, 1081 (10th Cir. 1994) ("[T]he decision whether to defer to the state courts is necessarily left to the discretion of the district court in the first instance.") (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 19 (1983)).  When exercising its discretion, the Court is mindful that the claims asserted in the Second Amended Complaint are not limited to pollution discharged from the property after January 27, 2014.  *See, e.g., Second Am. Compl.* [#39] ¶¶ 107 ("Arsenic concentrations have been increasing in the ground water beneath the [property] since the concrete cap was installed in June 2009."), 114-22 (discussing long term data from monitoring wells), 131 (chart showing reported pH of discharge for the period October 31, 2008 through December 31, 2013).

As noted above, when exercising its discretion to enter a stay, the Court considers the following factors: (1) the interest of the plaintiff in proceeding expeditiously and the potential prejudice to the plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the Court; (4) the interests of nonparties; and (5) the public interest.  *String Cheese Incident, LLC*, No. 2006 WL 894955, at *2 (citing *FDIC v. Renda*, No. 85-2216-O, 1987 WL 348635, at *2 (D. Kan. Aug. 6, 1987) (unreported decision)).

### a.    Plaintiff's Interests

Plaintiff argues that it will suffer "immediate hardship" if a stay is entered.  *Response* [#34] at 13.  In support of this contention, Plaintiff argues that "[w]ithout the required monitoring, sampling and reporting required under the Permit . . . neither IRG not the public has any way of knowing the extent of the concentration of pollutants being discharged by Defendants to the South Platte River at this time."  *Id.*  Plaintiff avers that its "members, supporters, and staff [ ] regularly use and enjoy the South Platte River, including the waters

13

immediately upstream and downstream from Defendants' discharges at the" property. *Second Am. Compl.* [#39] ¶ 42.  Plaintiff also maintains that its members and staff use the South Platte River as a drinking water supply and recreate in the river and adjacent trail system. *Id.* ¶¶ 42-44.  As a result, Plaintiff alleges that "Defendants' discharges expose [its] members to pollutants that threaten their health and safety." *Id.* ¶ 45.  Taking these allegations into account, the Court finds that Plaintiff has a strong interest in proceeding expeditiously and there is potential prejudice to Plaintiff if a stay is entered.  Accordingly, the first *String Cheese Incident* factor weighs against a stay.

### b.   The Burden on the Moving Defendants

The Moving Defendants argue that "[i]f this action goes forward, IRG [ ] will have to present the same arguments in two separate proceedings, both Defendants will have to respond to and conduct potentially unnecessary discovery, and both Defendants could be subjected to inconsistent rulings from state and federal forums." *Motion* [#29] at 7.  First, "[t]he ordinary burdens associated with litigating a case do not constitute undue burden." *Collins v. Ace Mortg. Funding, LLC*, No. 08-cv-01709-REB-KLM, 2008 WL 4457850, at *1 (D. Colo. Oct. 1, 2008) (denying motion for stay).  Second, with regard to Defendants' argument that they may be subject to inconsistent rulings, that might be an issue if the Court was asked only to address whether the Permit expired in January 2014, but, in this litigation, the Court is asked to determine whether Defendants have violated federal statutes both for the period after the Permit may or may not have expired and also for several years prior to that date.  Accordingly, the majority of the issues raised in this Court are not before the state court.  Therefore, the second *String Cheese Incident* factor, at best, neither weighs in favor nor against a stay.

14

### c.      The Convenience to the Court

The Court has an interest in managing its docket by having the cases on its docket proceed expeditiously.  *Johnston v. City of Colo. Springs*, No. 13-cv-02472-REB-MJW, 2014 WL 1978693, at *2 (D. Colo. May 15, 2014) (denying motion to stay); *United States for Daro Tech, Ltd. v. Centerre Gov't Contracting Grp., LLC*, No. 13-cv-01811-REB-KMT, 2014 WL 1215565, at *12 (D. Colo. March 24, 2014) (finding that "entry of a stay may cause significant delay of the resolution of this matter, which in turn makes the Court's docket less predictable and less manageable.").  Accordingly, the third *String Cheese Incident* factor weighs against a stay.

### d.      Interests of Nonparties and the Public Interest

Here, the only nonparty identified as having an interest in this matter is the public. As noted above, Plaintiff argues that the public will be prejudiced because it will have "no way of knowing the extent of the concentration of pollutants being discharged by Defendants to the South Platte River at this time."  *Response* [#34] at 13.  "The Clean Water Act benefits all Coloradans.  This is particularly so if its mandate is complied with as the law requires.  The public interest is best served by prompt action."  *Sierra Club v. El Paso Gold Mines, Inc.*, No. Civ. A. 01 PC 2163 OES, 2003 WL 25265871, at *6 (D. Colo. April 21, 2003) (internal quotation marks and citation omitted).  Here, as in *Sierra Club*, the Court finds that because of the public's interest in the prompt resolution of cases in which there are allegations that the public water supply is being polluted, the fourth and fifth *String Cheese Incident* factors weigh against a stay.  *See Friends of the Wild Swan, Inc. v. U.S. Environmental Protection Agency*, 130 F.Supp.2d 1207, 1213 (D. Mont. 2000).

Weighing the relevant factors, the Court concludes that a stay is not appropriate in

15

the case.

### 3.     The Doctrine of Primary Jurisdiction

Under the doctrine of primary jurisdiction, "courts will suspend judicial action on a case while simultaneously referring the matter to an agency with 'special competence' relevant to the claim." *Gilles v. Ford Motor Co.*, --- F.Supp.2d ---, 2014 WL 544990, at *6 (D. Colo. Feb. 12, 2014) (quoting *Reiter v. Cooper*, 507 U.S. 258, 268 (1993)).  The doctrine of primary jurisdiction may be invoked where "issues of fact in the case: (1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to the particular agency." *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1238 (10th Cir. 2007) (internal quotation marks and citation omitted).  "There is, however, no 'fixed formula . . . for applying the doctrine.'" *Id.* (quoting *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64 (1956).  Instead, the Court "should consider case-by-case whether 'the reasons for the existence of the doctrine are present and whether the purposes it serves [i.e., uniformity and resort to administrative expertise] will be aided by its application in the particular litigation.'" *Id.* (quoting *Western Pac. R.R. Co.*, 352 U.S. at 64).

"The purpose of the doctrine is to 'allow agencies to render opinions on issues underlying and related to the cause of action.'" *Id.* (quoting *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 415 F.3d 1171, 1179 (10th Cir. 2005)).  The doctrine is "designed to allow an agency to pass on issues within its particular area of expertise before returning jurisdiction to the federal district court for final resolution of the case." *Crystal Clear Commc'ns*, 415 F.3d at 1176.  However, if the agency to which the Court would refer the

issue for clarification has already made its position clear, there is no need to apply the doctrine. *Williams Pipe Line Co. v. Empire Gas. Corp.*, 76 F.3d 1491, 1496 (10th Cir. 1996); *see also Western Pac. R.R. Co.*, 352 U.S. at 69 ("Certainly there would be no need to refer the matter of construction to the Commission if that body, in prior releases or opinions, has already construed the particular tariff at issue or has clarified the factors underlying it."); *Fontan-de-Maldonado v. Lineas Aereas Costarricenses*, S.A., 936 F.2d 630, 631 (1st Cir. 1991) ("Of course, if the agency has already announced its views, there is no need to apply the doctrine.").

In this case, the Moving Defendants argue that the doctrine of primary jurisdiction applies because the Division denied them the right to a hearing regarding their withdrawal of the application to renew the Permit and that "the Division's bases for denying a hearing were not supported by law." *Motion* [#29] at 9.  Plaintiff argues that "the administrative agency, the Division, has passed on the issue of the existence of the Permit." *Response* [#34] at 15.  Therefore, it argues, there is no reason to invoke the primary jurisdiction doctrine in this case.  *Id.*

The Court agrees with Plaintiff.  The Division, the agency responsible for determining if the Permit was properly terminated, made its position regarding the Permit clear in its April 14, 2014 letter.  *See generally Response, Ex. C* [#34-3].  In that letter, the Division informed the Moving Defendants that it was "treating the [Permit] as an active, administratively-extended permit." *Response, Ex. C* [#34-3] at 1.  In the letter, the Division outlined the standard it applies when determining whether a permit may be terminated and further explained the reasons why Defendant IRG has not met this standard.  *Id.* at 1-4. In its June 6, 2014 letter, the Division denied the Moving Defendants' request for a hearing.

*See generally Response, Ex. D* [#34-4].  Because the purpose of the primary jurisdiction doctrine will not be served if the Court stays this action in order to seek guidance from the Division regarding the Permit, the Court declines to invoke the doctrine in this case.

### III.  Conclusion

For the reasons stated above,

IT IS HEREBY **ORDERED** that the Motion [#29] and the Surreply Motion [#44] are **DENIED**.

Dated:  September 24, 2014                    BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge